IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA.

        Plaintiff,

vs.                                              Crim. No. 12-2211 MCA

RICHARD DATES,

        Defendant.

## ORDER

This matter is before the Court upon Defendant's Motion to Suppress Statement [Doc. 60] and Defendant's Motion to Suppress Search Warrants [Doc. 62]. The Court has considered the written submissions of the parties, the evidence developed at the December 22, 2014 evidentiary hearing, the Pre-Hearing Stipulation on Evidence of Parties, the oral closing arguments of counsel at the December 30, 2014 hearing, the record in this case, and the applicable law, and is otherwise fully advised. The Motion is denied.

**Background**

Shortly after 7:00 a.m. on Friday, August 23, 2013, Homeland Security Investigations Agents Sonny Garcia and Alfred Justin Allen knocked on the door of Defendant's Grants, New Mexico apartment. At the time, Agents Garcia and Allen were investigating Defendant as part of "Operation Holitna," a nationwide and international investigation of child exploitation. Earlier, in May 2012, HSI agents had executed a search warrant for the Kansas City, Missouri residence of Michael Arnett. A forensic examination of Arnett's computers revealed that Arnett had been

1

exchanging child pornography using online chat programs. One of the individuals with whom Arnett exchanged files used the Skype screen name "walrus.blackhawk." Further investigation by HSI associated this screen name to the e-mail address walrusblackhawk@hotmail.com. The billing address associated with this e-mail address was "Richard Dates" of Crownpoint, New Mexico. In July 2012, HSI agents and local police executed a federal search warrant for the Worcester, Massachusetts residence of Geoffrey Portway. A forensic examination of Portway's computer revealed that Portway had chatted over Skype about raping, killing, and eating children with an individual using the Skype screen name "walrus.blackhawk." A forensic examination of Portway's computers established that he had transferred four pornographic images of children to an individual who used the screen name walrus.blackhawk. At the request of the Boston, Massachusetts HSI office, New Mexico HSI agents traced Richard Dates to an apartment at 609 Kingston Avenue in Grants. Agents Garcia and Allen conducted the August 23, 2013 knock and talk intending to confirm that Defendant was the actual user of the walrus.blackhawk screen name. HSI Agent Eric Bonza was standing by in Albuquerque to apply for a search warrant depending on the information developed by Agents Garcia and Allen. A team of HSI agents, including a forensic computer examiner, was standing by awaiting the issuance of a search warrant.

**The Initial Encounter and First Interrogation**

The conversation was recorded by the agents, and a copy of the recording is in the record before the Court. Based on a careful review of the recording of the interview as well as the participants' testimony, the Court reaches the following conclusions.

First, the interview occurred during a consensual encounter. "To constitute a seizure, an encounter between an officer and a citizen must involve the use of physical force or show of authority on the part of the officer such that a reasonable person would not feel free to decline the officer's requests or terminate the encounter." *United States v. Lopez*, 443 F.3d 1280, 1283 (10th Cir. 2006). The Court of Appeals has attempted to refine the inquiry by providing a non-exhaustive list of circumstances to be considered in deciding whether a police-citizen encounter amounts to a seizure. *Id.* at 1284.[1] The government bears the burden of proof on the issue of consent. *United States v. Parra-Garcia*, 1 Fed. Appx. 778, 781 (10th Cir. 2001). Here, Defendant was confronted at the threshold of his home by two agents wearing plainclothes. The agents were armed, but did not brandish or deliberately display their firearms. Agent Garcia addressed Defendant politely, using a non-threatening tone of voice. Neither agent touched Defendant. The agents acquiesced in Defendant's decision to speak to them at the threshold of his apartment, rather than inviting them inside. The agents did not object or interfere when Defendant shut the front door, locking the agents outside for several minutes while he dressed. Defendant, rather than the agents, proposed that he meet with the agents at a McDonald's restaurant. Defendant chose to ride with the agents rather than take his own car. Defendant chose the route to and from the McDonald's. When Defendant unequivocally insisted on speaking to a lawyer the agents terminated the interview and took Defendant back to his apartment. This evidence supports a conclusion that the encounter between Defendant and

---

[1] In *United States v. Thompson*, 546 F.3d 1223, 1227-28 (10th Cir. 2008), the Court of Appeals examined these factors with a critical eye, noting, for instance, that it is not clear whether the facts that an encounter occurred in a public or that the police wore uniforms rather than plain clothes generally weigh in favor or against a finding of consent. The Court concluded that a failure to advise a defendant of his rights—one of the routinely cited consent factors— "should carry little weight in our analysis." *Id.* at 1228.

Agents Garcia and Allen was consensual. On the other hand, although Agent Garcia was superficially polite, the substance of his questioning was persistent and intrusive, he did not advise Defendant of his Fourth Amendment right to immediately terminate the encounter, and the encounter took place in non-public areas—in a small courtyard outside the door of his apartment and in a government vehicle.  The Court concludes, based on the balance of circumstances, that the Supreme Court and Tenth Circuit Court of Appeals would deem the encounter consensual, both at its inception and throughout.

Second, Defendant's Sixth Amendment right to counsel had not attached because he had yet to be indicted or otherwise subjected to adversary criminal proceedings.  *Edwards v. Arizona*, 451 U.S. 477, 480 n.7 (1981) (discussing *Massiah v. United States*, 377 U.S. 201 (1964)); *see also United States v. Conrad*, 2014 WL 712962 *9 (N.D. Iowa 2014) (observing  that Sixth Amendment right to counsel does not attach until a prosecution has commenced);  *United States v. Banks*,  2010 WL 1451357 *2 (E.D. Ky. 2010) ("It is undisputed that when [defendant] allegedly invoked her right to counsel, no adversary criminal proceeding had begun. Thus, [defendant] could not have invoked a Sixth Amendment right to counsel at her interview."); *United States v. Zaleski*, 559 F. Supp. 2d 178, 188 (D. Conn. 2008) (same)

Third, Defendant's Fifth Amendment right to counsel had not attached because Defendant was not in custody.  *Edwards*, 451 U.S. at 481 (discussing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966));  *see also United States v. Jones*,  523 F.3d 1235, 1244 (10th Cir. 2008) (holding that suspect's *Miranda* rights were not triggered by encounter with federal agents which was either a consensual encounter or, at most, a *Terry* stop); *Banks*,  2010 WL 1451357 *6 ("The Court need

4

not reach [the magistrate's] analysis on whether [defendant's] request for counsel was unambiguous because [defendant] had no right to counsel to invoke . . . .").

Fourth, Defendant's admissions to the agents were voluntary under the totality of the circumstances. "[E]ven if a defendant is not subject to custodial interrogation—and therefore not entitled to *Miranda* warnings—his incriminating statements, if involuntarily produced, are inadmissible." *United States v. Cash*, 733 F.3d 1264, 1280(10th Cir. 2013). "The voluntariness of a statement 'depends upon an assessment of "the totality of all the circumstances" including "both the characteristics of the accused and the details of the interrogation."'" *Id.* (quoting *United States v. Chalan*, 812 F.2d 1302, 1307 (10th Cir. 1987)). The Court of Appeals has provided a non-exhaustive list of circumstances to be considered in a totality-of-the-circumstances analysis. *Id.* at 1280-81 (quoting *Lopez*, 443 F.3d at 1063-64). A statement will not be considered involuntary in the absence of "coercive policy activity." *United States v. Lamy*, 521 F.3d 1257, 1261 (10th Cir. 2008). The government bears the burden of proving voluntariness by a preponderance of the evidence. *United States v. Williams*, 576 F.3d 1149, 1162 (10th Cir. 2009). Defendant was a well-educated, 67-year-old adult. While not in perfect health, he was not suffering from medical conditions that would have seriously affected his ability to reason or to assert his rights. As noted above, Defendant consented to the encounter with Agents Garcia and Allen. "[C]ourts have recognized that non-custodial interviews are not nearly as 'inherently coercive' as those that take place while a suspect is in custody." *United States v. Coleman*, 2014 WL 4662390 *5 (N.D. Ga. 2014). Defendant exercised considerable control over the circumstances, choosing the location for the interview—a McDonald's restaurant—and choosing to ride with the agents rather than drive his own vehicle. The Agents

5

were superficially polite, speaking to Defendant in a non-threatening tone of voice. Defendant was not manhandled or threatened with physical punishment. Food, drink and a restroom were available at the McDonald's restaurant. The initial encounter lasted approximately an hour, with interruptions while Defendant dressed and when the agents used the restroom at the McDonald's. The questioning ended when Defendant unequivocally insisted on speaking to a lawyer. On the other hand, Agent Garcia's questioning was persistent and intrusive, and Agent Garcia misled Defendant about Defendant's relationship to the investigation, initially suggesting that Defendant might be a victim rather than a suspect. The agents arrived just after 7:00 a.m. rousing Defendant, who had slept for a few hours after having worked late the previous evening. The agents did not advise Defendant of his privilege against self-incrimination or his Fourth Amendment right to terminate the encounter, circumstances that are especially significant given that Defendant had no prior experience with the criminal justice system. Agent Garcia continued questioning Defendant notwithstanding repeated statements by Defendant that he did not want to talk to the agents and that he might need a lawyer. On balance, Agent Garcia's questioning, while persistent, manipulative, and at times deceptive, was not sufficiently coercive to render Defendant's statements involuntary.

**The Subsequent Encounter and Second Interrogation**

At the end of the initial encounter, Defendant told the agents that they could contact him next week, after he had consulted with a lawyer. The agents dropped Defendant off at his apartment after providing Defendant with their phone numbers.

During the initial encounter, Defendant made crucial admissions. In particular, he admitted using the walrus.blackhawk email addresses and having used Skype to discuss child

pornography with an unidentified individual. This information was relayed by Agent Allen to Agent Bonza, who incorporated it into an affidavit in support of an application for a warrant to search Defendant's apartment. The application for a search warrant was submitted to United States Magistrate Judge Lorenzo F. Garcia. Judge Garcia granted the application. A warrant was issued and faxed to the agents in Grants. The return on the warrant states that the warrant was executed at 1:06 p.m. on August 23, 2013.

As other agents were executing the search warrant, Agents Garcia and Allen drove to the offices of the Cibola Beacon, where Defendant worked as a copy editor. While there, they learned that Defendant was present. When Defendant left, the agents followed Defendant's vehicle. Defendant pulled into the parking lot of a liquor store. The agents followed Defendant's vehicle into the parking lot. Defendant got out of his vehicle and approached the agent's SUV. Defendant asked the agents "Why are you following me?" Agent Garcia explained to Defendant that they were watching him while a search warrant was being executed at his apartment with the intention of obtaining an arrest warrant depending on the evidence discovered during the search. Defendant was obviously taken aback by this information.[2] Defendant told the agents that "we need to talk." Agent Garcia responded "No. We're not talking to you. You . . . wanted to talk to an attorney. Go talk to an attorney. . . . We can't talk to you now." Defendant insisted that they talk. Agent Allen proposed that Defendant follow them back to his apartment where he could re-approach the agents. Defendant followed the agents SUV back to his apartment, parking his vehicle next to the agents' SUV. There was a bustle of activity as the team of agents

---

[2]As a result of his initial encounter with Agents Garcia and Allen, Defendant planned to delete the child pornography on his computers. [Gov't Ex. 2 at 46] Prior to going to his job at the Cibola Beacon, he destroyed the hard drive from a back-up computer. The execution of the search warrant prevented Defendant from destroying the evidence on his main computer.

executed the search warrant for Defendant's apartment.  Agent Garcia opened the rear hatch of the agents' SUV so that he and Defendant could sit on the rear of the cargo area. At 2:55 p.m. Agent Garcia read Defendant his *Miranda* rights and had Defendant read them back.

The ensuing conversation between Defendant and Agents Garcia and Allen was recorded by the agents and a copy of the recording is in the record before the Court.  Based on a careful review of the recording as well as the participants' testimony, the Court reaches the following conclusions.

First, the second interview occurred during a consensual encounter.   Agent Allen proposed that Defendant follow them back to Defendant's apartment; the agents did not order Defendant to follow them back to Defendant's  apartment.  When Defendant arrived at his apartment, Agent Garcia told Defendant that he was not under arrest, and Defendant agreed that he was not under arrest "at this point."   The interview took place in a semi-public area—sitting at the rear hatch of the agents' SUV which was parked in a parking lot next to Defendant's apartment.  As before, the agents were polite, using a non-threatening tone of voice and manner.  The interview lasted about an hour and a quarter.  The Court concludes that based on the balance of factors, the Supreme Court and Tenth Circuit Court of Appeals would deem the encounter consensual, both at its inception and throughout the encounter.

Second, Defendant's Sixth Amendment right to counsel had not attached because he had yet to be indicted or otherwise subjected to adversary criminal proceedings.         Third, Defendant's Fifth Amendment right to counsel had not attached because Defendant was not in custody.

Fourth, Defendant's admissions to the agents were voluntary under the totality of the circumstances. Defendant, while not in perfect health, was not suffering from medical conditions that would have seriously affected his ability to reason. Defendant consented to the encounter with Agents Garcia and Allen. Prior to the second interview, Agent Garcia read Defendant a *Miranda* statement, which advised Defendant of his rights to remain silent and to stop the questioning at any time. Defendant then read back the *Miranda* statement. Defendant and Agent Garcia discussed the mechanics of exercising Defendant's right to counsel and right to remain silent. When Defendant asked "And I can stop at any time?" Agent Garcia responded "Absolutely." Agent Allen reinforced the point, stating "Any time. That's your right." Defendant was not manhandled or threatened with physical punishment. Agent Garcia's questioning was persistent and intrusive, but never loud or overbearing. Agent Garcia clearly took advantage of Defendant's emotional vulnerability. But to render a statement involuntary, the officer's must have taken "*unfair* advantage of [the] defendant's traits or the surrounding circumstances." *Lamy*, 521 F.3d at 1262-63 (quoting *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993) (emphasis added; internal quotation marks omitted). On balance, the Court finds that the Agents did not take unfair advantage of Defendant's emotional vulnerability and that the Agents' questioning was not sufficiently coercive to render Defendant's statements involuntary.

The principal flaw in Defendant's motion to suppress is his erroneous assumption that a constitutional right to counsel had attached during his interviews with Agents Garcia and Allen.[3] As noted above, his Sixth Amendment right to counsel had not attached because he had not been

---

[3] The Court repeatedly attempted to call counsels' attention to this point during the December 30, 2014 hearing.

charged or otherwise made the subject of adversarial judicial proceedings; his Fifth Amendment right to counsel had not attached because he was not in custody. Thus, Defendant had no constitutionally-secured right to counsel to invoke during the interviews. The "prophylactic" rule of *Edwards*, which is designed to prevent police from "badgering" a defendant into waiving his previously asserted *Miranda* rights, *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991) (quoting *Michigan v. Harvey*, 494 U.S. 344, 350 (1990)), did not apply to Defendant because his Fifth Amendment right to counsel had not yet attached as he was not in custody, *United States v. Cook*, 599 F.3d 1208, 1214-15 (10th Cir. 2010); *see also Brosius v. Warden, United States Penitentiary, Lewisburg, PA.*, 125 F. Supp. 2d 681, 694 (M.D. Pa. 2000) (observing that "petitioner's reliance on *Davis* . . . and *Edwards* . . . is misplaced because those cases dealt with suspects in custodial settings"); *United States v. Wright*, 777 F.3d 769, 777 (5th Cir. 2015) (declining to reach question of whether defendants reference to a lawyer was an "unambiguous or unequivocal request for counsel" because defendant was not subjected to custodial interrogation); *Schultz v. Howes*, 2014 WL 2085194 *8-9 (E.D. Mich. 2014) (collecting cases; discussing *Montejo v. Louisiana*, 556 U.S. 778 (2009)).

The Court will deny Defendant's motion to suppress his statements to Agents Garcia and Allen.

**Motion to Suppress Search Warrants**

Defendant also moves to suppress numerous images and videos containing child pornography seized pursuant to search warrants issued on August 23, 2012, and October 11,

10

2012. The focus of Defendant's motion is the August 23, 2012 search warrant.[4] He bases his challenges on *Franks v. Delaware*, 438 U.S. 154 (1978). "Under *Franks*, a Fourth Amendment violation occurs if (1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued." *United States v. Herrera*, 782 F.3d 571,573, 2015 WL 1516267 (10th Cir. 2015).

The first paragraph of the application for the August 23, 2012 search warrant includes a description of premises located in Raton, New Mexico [Gov't Ex. 5, Application for a Search Warrant]. Every other reference to the premises to be searched in the application, the attached affidavit, and, most importantly, the warrant itself, correctly identifies the premises to be searched as located at 609 Kingman Avenue, Apartment B, Grants New Mexico. It is clear to the Court that the misidentification in the first paragraph of the application was the product of negligence in the cut-and-paste preparation of the application. This accidental misidentification is what in earlier days would have been deemed a "scrivener's error." *See United States v. McClellan*, 165 F.3d 535, 545 (7th Cir. 1999) (rejecting *Franks* challenge to affidavit in which numbers in street of address of premises to be searched were transposed; characterizing transposition as "merely a scrivener's error"). Given the multiple correct descriptions of the premises to be searched in the application and accompanying affidavit, as well as the two correct descriptions on the warrant itself, the single error in describing the premises to be searched in the

---

[4]The affidavit offered in support of the October 11, 2012 warrant refers to evidence seized pursuant to the August 23, 2012 warrant. The Court understands Defendant to be claiming that the items of evidence seized pursuant to the October 11, 2012 warrant are fruits of the August 23, 2012 seizures. [Doc. 62 at 2 ("All inculpatory material discovered from that second supporting affidavit is subsumed in to the August 23 issues.")]

application does not invalidate the search warrant. *See United States v. Bursch*, 545 Fed. Appx. 652, 654-55 (9th Cir. 2013); *United States v. Snyder*, 471 Fed. Appx. 884 (11th Cir. 2012).

Defendant challenges the inclusion of the following averment in the affidavit tendered in support of the August 23, 2012 and October 17, 2012[5] search warrants: "Mr. Dates was advised that he was not under arrest and was in no way obligated to speak and was asked if he would consent to an interview." [Ex. 5, Affidavit of Eric Bonza, at 7] It is clear from the audio recording of the first interview that Agents Garcia and Allen did not advise Defendant that he was not under arrest and that he was in no way obligated to speak to them. Thus, the averment in the affidavit that "Mr. Dates was advised that he was not under arrest and was in no way obligated to speak" clearly was false.

Agent Bonza, the affiant, was not present when Agents Garcia and Allen interviewed Defendant, and therefore had no firsthand knowledge of what was said during the interview. He spoke with Agent Allen by telephone after the initial interview was over, incorporating information provided by Agent Allen into the affidavit in support of the August 23, 2012 warrant. [Tr. (Dec. 22, 2014) at 272, 298-99] Agent Allen did not recall telling Agent Bonza that prior to the first interview Defendant had been advised that he was not under arrest and that he was not obligated to speak to the agents. [Tr. (Dec. 22, 2014) at 309-10, 336-37] The Court finds it more likely than not that Agent Bonza included the averment that Defendant had been advised that he was not under arrest and that he was not obligated to speak to the agents based on Agent Bonza's assumption that this is what happened.[6] The Court finds that Agent Bonza acted

---

[5] The statement does not appear in the affidavit in support of the May 21, 2014 search warrant.

[6] During oral argument, the United States suggested that Agent Bonza may have included the statement that Defendant was advised of his rights based on his training: "what he put was probably the Academy."

recklessly in representing under oath to Judge Garcia that Defendant had been advised that he was not under arrest and that he was not obligated to speak to the agents when Agent Bonza had no actual knowledge that this was so.  As stated in the Restatement (Second) Torts:

> [S]ince knowledge implies a firm conviction, a misrepresentation of a fact so made as to assert that the maker knows it, is fraudulent if he is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented.  This is often expressed by saying that fraud is proved if it is shown that a false representation has been made without belief in its truth *or recklessly, careless of whether it is true or false*.

Section 526, cmt. e  (1977) (emphasis added).  Nevertheless, Defendant's *Franks* claim fails because Defendant cannot show that the erroneous statement was material.  With the statement stricken, the affidavit still avers that "Mr. Dates agreed to speak with Agents."  This statement is true and is sufficient to have permitted Judge Garcia to infer that Defendant's statements were the products of a consensual encounter.  Further, Defendant has not cited any authority for the proposition that a search warrant affidavit must anticipate and negate possible constitutional challenges to information incorporated in the affidavit.  Arguably, the affidavit would not be deficient even if the Court were to strike all statements bearing on consent and voluntariness.  The crucial information comprises Defendant's admissions that he has email accounts associated with the name Walrus Blackhawk, that he has a Skype account that he has used on multiple occasions to discuss child pornography and that he has viewed images of child pornography on a laptop computer he maintained at his 609 Kingman Avenue apartment.

      The Court will deny Defendant's Motion to Suppress Search Warrants.

      **WHEREFORE, IT HEREBY IS ORDERED** that Defendants' Motion to Suppress Statement [Doc. 60] and Defendant's Motion to Suppress Search Warrants [Doc. 62] are **denied**.

**So ordered this 12th day of May, 2015.**

_____
M. CHRISTINA ARMIJO
Chief United States District Judge