IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

                                        No. CR 12-2211 JB

RICHARD J. DATES,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the corrected second Petition for Revocation of Supervised Release, filed July 17, 2025 (Doc. 249)("Petition for Revocation"). The Court holds an evidentiary hearing on October 27, 2025. Clerk's Minutes at 1, filed October 27, 2025 (Doc. 267)("Clerk's Minutes"); Draft Hearing Transcript of Proceedings at 1 (taken October 27, 2025)(Court)("2025 Tr.").[1] The primary issues are: (i) whether Defendant Richard J. Dates violates his modified conditions of supervised release, where Dates searches for written materials, reads written materials, and saves images of written materials describing historical acts of sexual violence; and (ii) whether Dates violates his modified conditions of supervised release, where Dates searches for images of a serial killer/sex offender's adolescent victim, views images of serial killer/sex offender's adolescent victim, and saves an image of a serial killer/sex offender's adolescent victim. The Court concludes that: (i) Dates violates his modified conditions of supervised release, where Dates searches for written materials, reads written materials, and saves images of written material describing historical acts of sexual violence, because Plaintiff United

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

States of America shows, by a preponderance of evidence, that the written material Dates saves to his cellphone "depicts" sadistic or masochistic abuse within the definition of 18 U.S.C. § 2256; (ii) Dates does not violate his modified conditions of supervised release, where Dates searches for a images of a serial killer/sex offender's adolescent victim, views images of a serial killer/sex offender's adolescent victim, and saves images of a serial killer/sex offender's adolescent victim, because the United States does not show, by a preponderance of evidence, that the image Dates saves to his cellphone depicts sexually explicit conduct within the definition of 18 U.S.C. § 2256 (iii) Dates commits a Grade C violation pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") policy statement § 7B1.1; (iv) Dates' criminal history category is I; and (v) Dates' grade C violation and criminal history category of I, under § 7B1.1 of the Guidelines establishes a revocation imprisonment range of 3 to 9 months. Pursuant to 18 U.S.C. § 3583(e)(3), the maximum term of imprisonment upon revocation of supervised release is 24 months.

## FACTUAL BACKGROUND

In the Factual Background, the Court: (i) makes its findings of fact related to Dates' personal background and criminal history; (ii) discusses Dates' original crime of Distribution of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. §§ 2252(a)(2), 2252(b)(1), 2256; and (iii) discusses Dates' judgment and supervised release conditions. The Court uses facts in the Presentence Report, disclosed on January 13, 2016 ("PSR"), as findings of fact. See Federal R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact."). At the sentencing, in 2016, the Court adopts the PSR's findings as its own, and these are still helpful in providing context. See Clerk's Minutes at 1, filed September 15, 2016 (Doc. 161).

1.    **<u>Personal Background.</u>**

1.      Dates has a history of mental health issues.  <u>See</u> PSR ¶ 57, at 11.

2.      Specifically, Dates has a history of suicidal thoughts and a history of depression. His Sister confirms this history.  <u>See</u> PSR ¶ 57, at 11-12.

3.      While initially incarcerated in Torrance County Detention Center in Estancia, New Mexico, Dates "displayed behavior that prompted medical staff to conduct a psychological evaluation."  PSR ¶ 58, at 12.

4.      Dates refuses to corporate, however, and the providers defer a formal diagnosis. <u>See</u> PSR ¶ 58, at 12.

5.      As to Dates' sexual history, he "'always knew something was wrong,'" PSR ¶ 61, at 12 (quoting Dates), but Dates remains abstinent and never engages in sexual intercourse, <u>see</u> PSR ¶ 60, at12.

6.      Dates knows his sexual desires towards children are wrong and that the desires contribute to "'lifelong problems with sexual functioning.'"  PSR ¶ 61, at 12 (quoting Dates).

7.      In 1982, Dates seeks treatment for his "issues," but the treatment is unsuccessful. PSR ¶ 61, at 12.

8.      The treatment is not a success, because of "'barriers,'" including fear that his providers are "'mandatory reporters.'"  PSR ¶ 61, at 12 (quoting Dates).

9.      Dates is educated.  <u>See</u> PSR ¶ 65, at 13.

10.     Dates holds a bachelor's degree in biology, a master's degree in education, and a doctorate degree in chiropractic.  <u>See</u> PSR ¶ 65, at 13.

11.     Additionally, Dates conducts research at the University of Chicago, where he studies "human deviance and medicine."  PSR ¶ 65, at 13.

12.     Dates attends several universities where he does not obtain degrees, and he spends roughly twenty-three years enrolled in higher education institutions.  See PSR ¶ 65, at 13.

13.     Lastly, Dates' has a teaching certificate, but it is no longer active following his arrest.  See PSR ¶ 65, at 13.

14.     Dates works at several schools.  See PSR ¶¶ 68-73, at 14-15.

15.     Dates earliest employment is at the Chicago Academy of Arts in Chicago, Illinois, from 2002 to 2003.  See PSR ¶ 73, at 14.

16.     From September, 2003, to May, 2005, Dates works at the Ramah Navajo School in Pine Hill, New Mexico.  See PSR ¶ 72, at 14.

17.     In 2007, Dates works at the Liberal High School in Liberal, Kansas.  See PSR ¶ 71, at 14.

18.     From 2007 to 2012, Dates works at the McKinley Public Schools in Gallup, New Mexico.  See PSR ¶ 70, at 14.

19.     Dates works at the Cibola Beacon Newspaper in Grants, New Mexico, from April to August of 2012.  See PSR ¶ 69, at 14.

**2.      Criminal History.**

20.     Dates' criminal history is limited.  See PSR ¶¶ 42-47, at 9-10.

21.     Dates does not have a history of: (i) juvenile adjudications, see PSR ¶ 42, at 9; (ii) adult criminal convictions before the police arrest him in 2012, see PSR ¶ 43, at 9; (iii) other criminal conduct, see PSR ¶ 45, at 9; (iv) pending charges, see PSR ¶ 46, at 10; or (v) other arrests, see PSR ¶ 47, at 10.

22.    On August 3, 2015, Dates pleads guilty to Distribute of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct under 18 U.S.C. § 2252(a)(2), 18 U.S.C. § 2252(b)(1), and 18 U.S.C. § 2256.  See PSR ¶ 2, at 4.

23.    The Department of Homeland Security ("DHS") investigates Dates in 2013 for his association with "a network of individuals producing and trading images of child pornography both domestically and internationally."  PSR ¶ 11, at 4.

24.    The individuals in this network "were also chatting online about the cannibalization of the children in the images."  PSR ¶ 11, at 4.

25.    On August 23, 2012, DHS agents contact Dates and meet with him to discuss his affiliation with Geoffrey Portway, whom DHS arrests in connection with possession and distribution of child pornography.  See PSR ¶ 12, at 5.

26.    Dates states that, during this meeting, Portway sends him "images of child pornography; however, [] he deleted the images."  PSR ¶ 12, at 5.

27.    After Dates meet with the DHS agents, the investigators observe Dates place a trash bag in a dumpster that contains "a destroyed hard drive."  PSR ¶ 13, at 5.

28.    Later, "Dates admitted he destroyed the hard drive following his initial contact with [] agents and that the hard drive had contained several images of child pornography."  PSR ¶ 13, at 5.

29.    When DHS searches Dates' home, pursuant to a search warrant, the agents locate "two thumb drives, two laptop computers, several CD's, a digital camera, a voice recorder, and several DVD's."  PSR ¶ 14, at 5.

30.    After searching Dates' items, the "agents determined the defendant was in possession of child pornography images."  PSR ¶ 14, at 5.

31.     In addition to the digital files, the agents "found nearly 40 three-ring binders containing pornographic images, some of which included child pornography," at Dates' secondary residence in Ramah, New Mexico.  PSR ¶ 15, at 5.

32.      On binder "described how to butcher and strangle children."  PSR ¶ 15, at 5.

33.     After Dates hears about investigators executing a search warrant, he waives his rights and agrees to an interview with agents.  See PSR ¶ 16, at 5-6.

34.     In the interview, Dates "admitted he preferred images of children between the ages of 7 to 20 years and frequently used the images to masturbate."  PSR ¶ 17, at 6.

35.     "Dates also admitted he had discussed and fantasized about young people being raped, butchered, cooked, and severed.  Dates admitted he had photo-shopped several images of butchered body parts and had shared those images over the internet."  PSR ¶ 17, at 6.

36.     As examples of Dates' fantasies, DHS describes the file "boy preteen bound.00001.jpeg" depicting a "prepubescent male laying face down bound with his hands behind his back and tied to his ankles."  PSR ¶ 19, at 6.

37.     Furthermore, Dates also possesses several photo-shopped images depicting "mutilated, dismembered, and cooked bodies."  PSR ¶ 19, at 6.

38.     One image depicted the Norman Rockwell painting 'Freedom From Want' which had been photoshopped to replace the turkey on the serving platter with a burnt baby.  Another image depicted a child on a rotisserie spit over a barbecue."  PSR ¶ 19, at 6.

**3.     Supervised Release.**

39.     A standard condition of supervision for Date is that he "shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer."  Judgment in a Criminal Case at 3, filed December 1, 2016 (Doc. 163)("Judgment").

40.    A special condition of supervision for Dates is that he is "prohibited from viewing or possessing any material that depicts sexually explicit conduct as defined in 18 U.S.C. 2256, including images, books, writings, drawings, video games, or videos depicting actual sexual intercourse.  This also includes computer or computer-generated images or pictures, whether made or produced by electronic, mechanical, or other means."  Judgment at 5.

41.    A special condition of supervision for Dates is that he is "prohibited from viewing or possessing any material including photographs, images, books, magazines, writings, drawings, newspapers, video or video games, depicting and/or describing any nude or partially nude individuals."  Judgment at 5.

42.    On August 21, 2024, Dates pleas guilty to violating his standard condition by failing to answer truthfully all the probation office's inquiries and follow the probation office's instructions.  See Judgment in a Criminal Case at 1 (Doc. 245).

43.    In July, 2025, Dates performs an internet search for "Dean Corrl."  2025 Tr. at 7:24-25 (Roybal).[2]

44.    Corrl is "famous" and known to "sexually abuse and sexually torture minor boys before he would kill them."  2025 Tr. at 8:1-5 (Roybal).[3]

_____

[2] During the October 27, 2025, hearing, the United States states that Dates performs an internet search for Dean Corrl.  See 2025 Tr. at 7:24-25 (Roybal).  Dates does not dispute that he performs an internet query of Dean Corrl.  Accordingly, the Court accepts as true the United States' undisputed statement of fact.

[3] The United States repeats that Corrl is a serial killer and known for a particular pattern of violence.  See 2025 Tr. at 8:1-5 (Roybal).  Dates does not dispute this characterization of Corrl.  Accordingly, the Court accepts as true the United States' undisputed statement of fact.

45.     Dates searches "dean corll polaroid boy."  2025 Tr. at 8:11-13 (Roybal).[4]

46.     The individual in the image the United States presents as "polaroid boy" is not naked.  2025 Tr. at 8:12-16.[5]

47.     Dates takes a screenshot of a Wikipedia article detailing Corrl's assault of three children.  See 2025 Tr. at 9:8-10 (Roybal).[6]

---

[4] The United States shares her screen with the Court displaying Dates' various internet searches.  One of the that searches she highlights is "dean corll polaroid boy."  2025 Tr. at 8:10-11 (Roybal).  Dates does not that dispute he searches for "dean corll polaroid boy."  The United States also represents to the Court that "there is no dispute or objection that the material that probation has presented to the parties is authentic."  2025 Tr. at 6:11-21 (Roybal).  Dates does not dispute the United States' representation or the authenticity of the evidence that the United States displays from its screen.  Accordingly, the Court accepts as true the United States' undisputed statement of fact.

[5] The parties do not agree whether the boy in the image is nude.  Date argues that the "child is clothed."  2025 Tr. at 10:2-3 (Elsenheimer).  The United States states that "this is more of a question mark for me" whether the image contains nudity.  2025 Tr. at 8:15-16 (Roybal).  Dates points to the United States' response as evidence that the United States cannot meet its burden.  As a matter of law, the Court agrees with Dates that the United States' uncertainty constitutes evidence that it fails to carry its burden of proving, by a preponderance of the evidence, that the photographs depict nudity.  See 2025 Tr. at 10:2-3 (Elsenheimer).
As a factual matter, the Court finds that the child in the image is not nude.  The Merriam-Webster Dictionary defines "nudity" as "the quality or state of being nude."  Nudity, Merriam-Webster.com    Dictionary,    Merriam-Webster,    https://www.merriam-webster.com/dictionary/nudity. (last visited on Jan. 7, 2026).  The dictionary defines "nude" as "2a: devoid of a natural or conventional covering."  Nude, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/nude.  (last visited on Jan. 7, 2026).  The Court finds that something covers the boy in the picture.  Whether that something is a blanket or another covering, the Court concludes it cannot say the boy is "devoid" of covering.

[6] The United States displays the screenshot for the Court, and Dates does not dispute the screenshot, but only how the United States characterizes the content.  See 2025 Tr. at 10:18-21 (Elsenheimer)("And with regard to the yes, it a Wikipedia entry, there is nothing about that writing that might depict . . . .").

48.    The paragraph "depicts" a historical account of assault, torture, and rape.  2025 Tr.

at 16:19-24 (Elsenheimer).[7]

_____

[7] The parties disagree whether the article "depicts" Corrl's conduct.  The United States argues that the Wikipedia article "depicts" the assault and torture.  2025 Tr. at 15:21-23 (Roybal)("If we're going to get into a dispute about whether the words summary and depiction are different, then I think we've gone too far.").  Dates, in contrast, does not see the Wikipedia article as depicting anything; instead, he characterizes the article as "summarizing" or "describing" the assault and torture.  2025 Tr.  at 14:10-11 (Elsenheimer)(arguing that the text "doesn't depict assault and the torture").  Notably, Dates does not dispute that the content includes assault, torture, and rape.  According to Dates, whether the paragraph "describes" or "depicts" is important, because Dates' special conditions prohibit him from viewing or possessing any material that depicts sexually explicit conduct as 18 U.S.C. § 2256's defines that term.  2025 Tr. at 6:25-7:6 (Elsenheimer).

The thrust of Mr. Elsenheimer's argument is that: (i) the Wikipedia article does not "depict sexually explicit conduct"; and (ii) the conduct does not fall into the definition of sexually explicit conduct under 18 U.S.C. 2256.  2025 Tr. at 6:25-7:6 (Elsenheimer).  The Court addresses the first part of Dates' argument, here, regarding the question whether the paragraph "depicts" conduct, and leaves the legal question whether the content is sexually explicit conduct under 18 U.S.C. § 2256 for the following analysis.

The Merriam-Webster Dictionary defines "depict" as "1: to represent by or as if by a picture" or "2: Describe Sense 1."  Depict, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/depict (last visited on Jan. 7, 2026).  Describe Sense 1 is "to represent or give an account of in words."  Describe, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/describe (last visited on Jan. 7, 2026).  At the outset, Dates' argument falters, because the dictionary definition of "depict" relies on the term "describe," undermining the definitional distinction on which Dates relies.  See also Depict, Oxford English Dictionary Online, https://www.oed.com/dictionary /depict (last visited on Feb. 25, 2026)(defining "depict" as "2. To represent or portray in words; to describe graphically").  As for the word "summary," when used as noun, it is "an abstract, abridgment, or compendium especially of a preceding discourse."  Summary, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/summary.  (last visited on Jan. 7 2026).  With these definitions in mind, the Court considers the Wikipedia article's text.

The Court considers the entire text when making its factual determination.  Specifically, the Court considers how the first paragraph' "intention" increases the vividness of the second paragraphs "action."  2025 Tr. at 12:25-13:3 (Roybal).  The first paragraph, as the United States highlights, states:

> Corll agreed and untied Henley, then separately carried Kerley and Williams into his bedroom and tied them to opposite sides of his torture board: Kerley on his stomach; Williams on her back.[]  A transistor radio was placed between Williams and Kerley and the volume turned to maximum to muffle any potential screaming.  Corll also removed the

**PROCEDURAL BACKGROUND**

In this section, the Court describes the Judgment.  See Judgment at 1.  Next, the Court

describes the Request for Modifying the Conditions or term of Supervision with the Consent of

the Offender, filed February 19, 2021 (Doc. 201)("Petition for Modification").  Then, the Court

describes the second Request for Modifying the Conditions or terms of Supervision with Consent

of the Offender, filed on February 18, 202 (Doc. 204)("Second Petition or Modification").  Next,

the Court discusses three revocation petitions that the USPO files including the first Petition for

---

adhesive tape from Kerley's mouth before informing him of his intentions to 'look up' his anus as Henley again began inhaling paint fumes from a paper bag.

Dean Corll, Wikipedia, https://en.wikipedia.org/wiki/Dean_Corll (last visited Jan. 7, 2025).  On the Court's reading, this paragraph alone properly may be understood to "represent . . . as if by a picture."  Depict, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/depict. (last visited on Jan. 7, 2026).  Even assuming that the historical nature of the account diminishes its pictorial vividness, the second paragraph eliminates any remaining uncertainty.  The second paragraph states:

> Corll then handed Henley an eighteen-inch hunting knife and ordered him to cut away Williams's clothes,[] insisting that, while he would rape and kill Kerley, Henley would do likewise to Williams.  He then shouted, "What are you waiting for?"[]  Henley began cutting away Williams's jeans and underwear as Corll placed the pistol on a bedside table, undressed and began to assault and torture Kerley.  Both Kerley and Williams had awakened by this point. Kerley began writhing, pleading and shouting as Williams, whose gag Henley had removed, lifted her head and asked Henley, "Is this for real?" to which Henley answered, "Yes." Williams then asked Henley: "Are you going to do anything about it?"

Dean Corll, Wikipedia, https://en.wikipedia.org/wiki/Dean_Corll (last visited Jan. 7, 2025). Dates argues that "saying an individual was tortured would not qualify as . . . depicting the torture," 2025 Tr. at 16:9-12 (Elsenheimer), but concedes that if the article "went into graphic depiction" of the torture, the article would "depict" the torture, 2025 Tr. at 16:19-21 (Elsenheimer).  The Court does not see how a narrative recounting an assailant "cutting away" a victim's clothing with an "eighteen-inch hunting knife," while the victim writhes, pleads, and shouts beneath a gag, does not "depict" graphically assault and torture.  Dean Corll, Wikipedia, https://en.wikipedia.org/wiki/Dean_Corll (last visited Jan. 7, 2025).  That Dates finds this narrative on Wikipedia does not change the Court's conclusion about his "depicts'" argument. 2025 Tr. at 16:1-16.  Accordingly, the Court concludes that the Wikipedia article "depicts" assault, torture, and rape.  Judgement at 5.

Revocation of Supervised Release, filed January 11, 2024 (Doc. 207)("First Violation"); the Amended Petition for Revocation of Supervised Release, filed April 19, 2024 (Doc. 227)("Second Violation"); and third, and current, Petition for Revocation.

### 1.    The Judgment.

On December 1, 2016, the Honorable M. Christina Armijo, Chief United States District Judge for the United States District Court for the District of New Mexico, sentences Dates to a term of ten years of imprisonment. See Judgment at 2. In the Judgment, Chief Judge Armijo imposes several special conditions, including that Dates: (i) "must participate in and successfully complete an outpatient mental health treatment program approved by the probation officer"; (ii) "must undergo a risk assessment and/or psychosexual evaluation and begin participating in sex offender treatment, consistent with the recommendations of the assessment and/or evaluation"; and (iii) "is prohibited from viewing or possessing any material including photographs, images, books, writing, drawings, videos or video games, depicting and/or describing sexually explicit conduct or child pornography as defined in 18 U.S.C. 2256." Judgment at 5.

### 2.    The First Petition for Modification to the Conditions of Supervised Release.

On February 19, 2021, the USPO petitions the Court to modify Dates' conditions or terms of supervised release. See Petition for Modification at 1. In the Petition for Modification, the USPO requests that the Court impose location monitoring for a period of three months, because Dates is not able to complete successfully a term in a residential reentry center ("RRC") before the Bureau of Prisons release him into the community. Petition for Modification at 2. The USPO recommends location monitoring, furthermore, because the USPO considers Dates "a high-risk case," and Dates does participate in any sex offender treatment while in custody. Petition for Modification at 2. Both the Assistant United States Attorney and Dates agree to the modification.

See Petition for Modification at 2.  On February 25, 2021, the Court approves the Petition for Modification.  See Order Modifying (Doc. 202).

**3.       The Second Petition for Modification to the Conditions of Supervised Release.**

On February 18, 2022, the USPO again petitions the Cout to modify Dates' conditions or terms of supervised release.  See Second Petition for Modification at 1.  In the Second Petition for Modification, the USPO requests that the Court restrict Dates from consuming alcohol and that Dates submits to alcohol testing.  See Second Petition for Modification at 1.  The USPO requests alcohol monitoring and testing, because, during a home visit, the probation officer observes a journal entry from Dates depicting "the physical assault of children in preparation for consumer them," and Dates' counselor expresses concern that "alcohol will lower his inhibitions enough to increase the likelihood that he will continue to write violent, sexual journal entries."  Second Petition for Modification at 1-2.  Additionally, journal entries describe "a sexual encounter between two grown men and a six-year-old boy, which resulted in murder of the young boy."  Second Petition for Modification at 1.  Dates agrees to the USPO's modifications, see Second Petition for Modification at 2, and the Court approves the modifications on February 24, 2022, see Order Modifying (Doc. 205).

**4.       The First Violation.**

On January 11, 2024, the USPO files the first Petition for Revocation of Supervised Release (Doc. 207)("First Petition for Revocation").  The USPO files the First Petition for Revocation, because Dates' cellphone monitoring software reveals that Dates is browsing "Greek-Love.com."  First Petition for Revocation at 1.  Greek-love.com describes Greek Love "as love between a boy, typically adolescent and an older adolescent or man."  First Petition for Revocation at 1.  The monitoring software also indicates that Dates "viewed two pictures of an adolescent

male with his penis exposed and a group picture of three males and one young boy, all of whom were naked." First Petition for Revocation at 1. Furthermore, the probation office finds at Dates' home books like "'The Witch's Guide to Cooking with Childre,'" and books "'depicting children in various degrees of captivity'" and "scantily clad young adolescents." First Petition for Revocation at 1.

### 5. The Second Violation.

On April 19, 2024, the USPO files the Amended Petition for Revocation of Supervised Release (Doc. 227)("Amended Petition for Revocation"). The USPO files the Amended Petition for Revocation alleging additional violations of: (i) "viewing or possessing any material including photographs, images, books, writings, drawings, videos or video games, depicting and/or describing sexually explicit conduct or child pornography as defined in 18 U.S.C. 2256"; and (ii) not answering "truthfully all inquiries by the probation officer and follow the instruction of the probation officer." Amended Petition for Revocation at 1-2. Specifically, on March26, 2024, the USPO finds books at Dates' homes containing images of naked adolescents and "literature appearing to justify viewing child pornography." Amended Petition for Revocation at 2. "The defendant has been continuously instructed by his probation officer not to possess a book depicting nudity." Amended Petition for Revocation at 2. At this time, the probation officer reviews with Dates the document he signed on February 26, 2021, acknowledging his requirement to follow the USPO's instructions. See Amended Petition for Revocation at 2.

### 6. The Third Violation.

On July 16, 2025, the USPO files the second Petition for Revocation of Supervised Release (Doc. 247)("Second Petition for Revocation"), and on July 17, 2025, the USPO files the Petition

for Revocation. The Petition for Revocation alleges that Dates violates the following special condition:

> You are prohibited from viewing or possessing any material that depicts sexually explicit conduct as defined in 18 U.S.C. 2256, including images, books, writings, drawings, video games, or videos depicting actual sexual intercourse. This also includes computer or computer generated images or pictures, whether made or produced by electronic, mechanical, or other means. Should the sex offense-specific assessment determine this factor is not a risk, then this condition shall not be enforced.

Petition for Revocation at 1-2. As evidence, the USPO states that Dates' cellphone history reveals Dates "conducted internet queries for the sadistic serial killer, 'Dean Corll,' who abducted, sexually assaulted, tortured and murdered teen boys and young men." Petition for Revocation at 2. Additionally, the USPO alleges, the monitoring software documents that Dates took a screenshot of text "describing a teenage girl and boy being tied to a 'torture board.'" Petition for Revocation at 2. The USPO continues stating that, in the text, Corll "informs the boy he wanted to 'look up his anus,'" and that Corll "apprises them they will be subjected to being raped and killed." Petition for Revocation at 2. Finally, the USPO states that the text reveals that the "boy is then assaulted and tortured by Corll." Petition for Revocation at 2.

## LAW REGARDING SUPERVISED RELEASE

A district court's decision-making with regard to violations of supervised release conditions comes in two phases. First, at sentencing, the court must decide whether to impose a term of supervised release and, if so, how long a term to impose and what conditions to associate with it. Second, while the defendant is on supervised release, if the United States accuses the defendant of violating a condition of supervised release, the court must determine whether the defendant has violated the conditions, whether to revoke supervised release, and, if the court revokes supervised release, what disposition to impose for the violation.

1.      **Imposition of Supervised Release.**

A court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may [and sometimes must] include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a) (brackets added). As part of a defendant's supervised release, the law binds the defendant to abide by certain conditions of his release. See 18 U.S.C. § 3583(d). Section 3583 of Title 18 of the United States Code sets forth some of the standard and discretionary conditions that courts shall and may impose as part of supervised release:

> **Conditions of supervised release.** -- The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant. The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act. The court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4). The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test. A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy. The court shall consider whether the availability of appropriate substance

abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test. The court may order, as a further condition of supervised release, to the extent that such condition --

(1)    is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2)    involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3)    is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation. The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

18 U.S.C. § 3583(d).

Thus, § 3583 specifies standard and discretionary conditions of supervised release, while, elsewhere, Congress provides for other conduct which, if a defendant commits on supervised release, can result in a revocation of supervised release. Among others, § 3583 provides that the defendant must not commit another federal, State, or local crime during the term of supervision, that the defendant not possess any controlled substances, and that the defendant cooperate in the collection of a DNA sample. See 18 U.S.C. § 3583(d). Further, § 3583 permits a court to craft

special conditions of supervised release that it deems appropriate.  See 18 U.S.C. § 3583(d).

Among those conditions that § 3583 does not list is that the court may revoke supervised release

if the defendant fails to pay a fine or restitution that the court imposes.  See 18 U.S.C. § 3613A

("Upon a finding that the defendant is in default on a payment of a fine or restitution, the court

may, pursuant to section 3565, revoke probation or a term of supervised release . . . .").  In

"determining whether to include a term of supervised release, and if a term of supervised release

is to be included, in determining the length of the term and the conditions of supervised release,"

the court "shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D),

(a)(4), (a)(5), (a)(6), and (a)(7)."  18 U.S.C. § 3583(c).[8]

### 2.    **Revocation of Supervised Release.**

Subsection (e)(3) of § 3583 sets forth the process for revoking supervised release:

**(e)    Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --

. . . .

(3)    revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure

---

[8]The Court discusses these eight specific § 3553(a) factors in the next two sections, which focus on a district court's re-imprisonment of a defendant following revocation of a term of supervised release under § 3583(e).  A district court must consider these same eight factors in both contexts.  Section 3583(c) omits § 3553(a)(2)(A), which requires a district court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  Judge Posner of the Seventh Circuit observes regarding this omission: "From the omission of subsection 3553(a)(2)(A), the court in United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012), inferred 'that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment.'"  United States v. Thompson, 2015 WL 151609, at * 2 (7th Cir. Jan. 13, 2015)(Posner, J.).  The Court agrees with that general observation and goal.

applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than three years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

18 U.S.C. § 3583(e).  Further, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."  18 U.S.C. § 3583(h).  See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that, even before the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorizes district courts to order terms of supervised release following reimprisonment).  The court must find all violations of supervised release by a preponderance of the evidence, regardless whether the violative conduct itself constitutes criminal conduct.  See 18 U.S.C. § 3583(e).  This standard is different from the ones that apply to a defendant's violation of pretrial release conditions -- mere probable cause for criminal violations and the heightened clear-and-convincing standard for noncriminal violations.  See 18 U.S.C. § 3148(b)(1).

A defendant violates a supervised release condition when the defendant violates the supervised release condition's express terms.  For example, in United States v. Roy, 438 F.3d 140 (1st Cir. 2006), the defendant has two express supervised release conditions: (i) that he respond to the probation officer truthfully; and (ii) that he participate in a mental health treatment program.  See 438 F.3d at 143.  The United States Court of Appeals for the First Circuit concludes that the defendant violates both express conditions, because he lies to his probation officer about having a relationship with a woman, and because a treatment program terminates the defendant for having

unapproved contact with children and being dishonest.  See 438 F.3d at 143.  At least one Court of Appeals concludes that, when a defendant does not participate in activities which the supervised release condition requires, the defendant violates supervised release conditions and faces revocation.  In United States v. Musso, 643 F.3d 566, 570 (7th Cir. 2011), the defendant's sex offender treatment contract requires the defendant, who has a conviction for possessing child pornography, to "participate in group discussions, treatment activities, and written assignments," and states that "simply showing up for sessions is not enough to be considered cooperative with treatment." 643 F.3d at 570.  The United States Court of Appeals for the Seventh Circuit affirms the district judge's conclusion that, because the defendant talks about superficial personal topics instead of the core issues that bring him to treatment, frequently denies, minimizes, or uses a victim stance to avoid accountability for his actions, and does not submit his homework assignments, the defendant does not "participate meaningfully" in sex offender treatment.  643 F.3d at 570. Furthermore, the defendant violates additional contract terms, including possessing prohibited sexual materials and engaging in prohibited contact with a minor.  See 643 F.3d at 570-71. According to the Seventh Circuit, the district court, therefore, correctly revokes the defendant's supervised release and imposes new special conditions of supervised release. See 643 F.3d at 570. As long as the defendant follows the supervised release conditions' express terms, the court does not revoke supervised release, even if the defendant harbors negative feelings towards the conditions or does not make progress.  See United States v. Hronich, No. CR 11-1789 JB, 2025 WL 1330467, at *1 (D.N.M. May 7, 2025)(Browning, J.)(denying petition to revoke supervised release, because the defendant attends and participates in sex offender treatment to the extent that supervised release special condition's language requires).

### 3.    Sentencing Following the Revocation of Supervised Release.

Consistent with § 3583(e)(2), the United States Court of Appeals for the Tenth Circuit explains: "When a convicted defendant violates a condition of supervised release, the sentencing judge may revoke the term of supervised release and impose prison time." United States v. Patton, 506 F. App'x 729, 731 (10th Cir. 2012)(Brorby, J.)[9](quoting United States v. Vigil, 696 F.3d 997, 1002 (10th Cir. 2012)(O'Brien, J.)(citing 18 U.S.C. § 3584(e))).[10] Considering the sentence, "[t]he judge must consider [certain] factors in 18 U.S.C. § 3553(a) and the policy statements in Chapter 7 of the Sentencing Guidelines." United States v. Patton, 506 F. App'x at 731 (brackets in original). See 18 U.S.C. § 3583(e).    The relevant portion of 18 U.S.C. § 3583(e) concerning revocation of supervised release provides that "[t]he court may, after considering the factors set

---

[9] United States v. Patton is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The United States Court of Appeals for the Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Patton, United States v. Miller, 608 Fed. App'x 707 (10th Cir. 2015), United States v. Chatburn, 505 Fed. App'x 713 (10th Cir. 2012), and United States v. Batres, 284 F. App'x 584 (10th Cir. 2008), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

[10] As described in the preceding section, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(h). See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that, even before the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorizes district courts to order terms of supervised release following reimprisonment). When a defendant violates conditions of his supervised release, therefore, the Court can sentence the defendant to imprisonment and further supervised release.

forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release." 18 U.S.C. § 3583(e). The relevant § 3553(a) factors are as follows:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed --

. . .

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . .

(4)    the kinds of sentence and the sentencing range established for --

. . . .

(B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5)    any pertinent policy statement --

(A)    issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B)    that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced; or

. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  See United States v. Patton, 506 F. App'x at 731 n.2 (explaining that 18 U.S.C. § 3583(e) lists the § 3553(a) factors that the Court must consider).[11]  The Tenth Circuit

---

[11]"Section 3583(e) does not list Section 3553(a)(2)(A) among the factors district courts should consider in modifying or revoking supervised release."  United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)(Baldock, J.).  The omitted section, § 3553(a)(2)(A), provides that, in determining the sentence to be imposed, the district court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).

The Supreme Court has not addressed whether a district court's consideration of a § 3553(a)(2)(A) factor during revocation sentencing is error.  See United States v. Miller, 608 Fed. App'x 707, 709 (10th Cir. 2015)(Baldock, J.).  The Courts of Appeals are split on the question.  See United States v. Chatburn, 505 Fed. App'x 713, 717 (10th Cir. 2012)(Matheson, Jr., J.).  The United States Courts of Appeals for the First, Second, Third, Sixth, and Seventh Circuits conclude that it is not error to consider § 3553(a)(2)(A) factors during revocation sentencing.  See e.g., United States v. Clay, 752 F.3d 1106, 1108-09 (7th Cir. 2014)(Flaum, J.); United States v. Vargas-Davila, 649 F.3d 129, 131-32 (1st Cir. 2011)(Selya, J.); United States v. Young, 634 F.3d 233, 239 (3d Cir. 2011)(Vanaskie, J.); United States v. Lewis, 498 F.3d 393, 399-400 (6th Cir. 2007)(McKeague, J.); United States v. Williams, 443 F.3d 35, 47-48 (2d Cir. 2006)(Kearse, J.).  The United States Court of Appeals for the Fifth, Ninth, and Tenth Circuits, by contrast, conclude that it is error to consider § 3553(a)(2)(A).  See United States v. Miller, 634 F.3d 841, 844 (5th Cir. 2011)(Garza, J.); United States v. Miqbel, 444 F.3d 1173, 1182 (9th Cir. 2006)(Reinhardt, J.); United States v. Booker, 63 F.4th 1254, 1259-60 (10th Cir. 2023).  The United States Courts of Appeals for the Fourth Circuit initially joins the Fifth and Ninth Circuits, holding that, "[a]ccording to § 3553(a)(2)(A), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence 'reflect[s] the seriousness of the offense, . . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense.'"  United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006)(Shedd, J.).  Seven years later, the Fourth Circuit limits United States v. Crudup's holding in United States v. Webb, 738 F.3d 638 (4th Cir. 2013)(Floyd, J.):

> A district court's meaningful consideration of the enumerated § 3553(a) factors when imposing a revocation sentence typically will include analysis that furthers the purposes of post-revocation incarceration.  Given that the § 3553(a)(2)(A) factors are closely related to the factors district courts are instructed to consider under § 3583(e), we fail to see how a district court's reference to the § 3553(a)(2)(A) sentencing considerations, without more, would automatically render a sentence unreasonable.  Accordingly, although a district court may not impose a revocation sentence

based predominantly on the seriousness of the releasee's violation or the need for the sentence to promote respect for the law and provide just punishment, we conclude that mere reference to such considerations does not render a revocation sentence procedurally unreasonable when those factors are relevant to, and considered in conjunction with, the enumerated § 3553(a) factors.

United States v. Webb, 738 F.3d at 641-42. The Ninth Circuit, likewise, later rules that its holding in United States v. Miqbel, 444 F.3d at 1182, does not make reliance upon a § 3553(a)(2)(A) factor improper per se, explaining:

[W]e did not set forth a blanket proposition that a court in no circumstances may consider the seriousness of the criminal offense underlying the revocation. The seriousness of the offense underlying the revocation, though not a focal point of the inquiry, may be considered to a lesser degree as part of the criminal history of the violator.

. . . .

To ignore the new violation underlying the revocation entirely would be to ignore a key predictor of a violator's potential for reintroduction into society without relapse. See, e.g., United States v. Tadeo, 222 F.3d 623, 626 (9th Cir. 2000)(finding no abuse of discretion where the court found that the use of narcotics in violation of supervised release created a risk that the defendant would commit serious crimes because some of his past criminal activity occurred while under the influence). The history of the violator, when combined with the violator's most recent criminal offenses, and particularly when similar to the past transgressions, is indicative of the violator's propensity for recidivism and inability to integrate peacefully into a community. See id.; U.S.S.G.M. Ch.7, Pt. A(4) (2006) (determining "that the purpose of . . . supervised release should focus on the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct"); see also 18 U.S.C. §§ 3553(a)(2)(B)(2003)(affording deterrence as one consideration) and 3553(a)(2)(C)(2003)(protecting the public from further crimes as another); 18 U.S.C. § 3583(e) (permitting the preceding factors for consideration in revocation sentences). A history of, for example, drug-related offenses, combined with a drug-related offense underlying revocation, as is the case here, creates a greater likelihood that the violator will relapse into the same or similar criminal activity. A violator who, after committing an offense and being placed on supervised release for that offense, again commits a similar offense is not only more likely to continue on that path, but also has demonstrated to the court that the violator has little respect for its command. Because the district court's trust in the violator's ability to coexist in society peacefully has been broken to a greater degree than if the violator had committed a minor offense of a dissimilar nature, greater sanctions may be required

holds that, at revocation sentencing, consideration of any other factors beyond § 3553(a), as well

as any § 3553(a) factors that §3583(e) does not enumerate explicitly -- such as the need for

retribution -- is improper.  See United States v. Booker, 63 F.4th 1254, 1259-60 (10th Cir. 2023).

In United States v. Booker, the Tenth Circuit applies to revocation sentencings its prior holding

from United States v. Smart, 518 F.3d 800, 803-04 (10th Cir. 2008)("Smart"), that any

consideration of sentencing factors that § 3553(a) does not enumerate is procedural error.  United

States v. Booker, 63 F.4th at 1259.  The Tenth Circuit explains that its holding in Smart also applies

---

to deter future criminal activity.  Consequently, if the nature and the severity of the underlying offense were removed from the equation altogether, the court's ability to predict the violator's potential for recidivism and to punish the violator for the violator's full breach of trust (and, ultimately, to deter the violator and to protect the public) would be impaired significantly.

United States v. Simtob, 485 F.3d 1058, 1062-63 (9th Cir. 2007)(Ezra, J.).
        Before the Tenth Circuit's decision in United States v. Booker, the Court thought that, like the Fifth and Ninth Circuits, it is not error to consider the § 3553(a)(2)(A) factors during revocation sentencing, and still thinks that it is not error and is probably the better rule.  The Court must apply, however, Tenth Circuit precedent.  Now, where there is a revocation, given United States v. Booker, the Court strives not to consider respect for the law, just punishment, and the seriousness of the offense.  The Court believes the solution and best practice is to keep always in mind what Judge Posner and the Third Circuit emphasize -- "that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." United States v. Thompson, 2015 WL 151609, at *2 (quoting United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012)(Fuentes, J.)).  The Court is mindful that all it does should help the defendant ease back into society after a sometimes lengthy prison sentence, and the Court tries not to punish the defendant, although sometimes incarceration is necessary, and Congress expressly authorizes incarceration to get the defendant to do what the Court and the USPO tell him or her to do.
        The Court makes one other observation.  When Congress and the Court says the word "offense" at a violation hearing, the question is whether it is referring to the underlying offense or to the violation.  The Court can consider both, but again, in meeting the goals of supervised release, the emphasis should be on the violation and not on the underlying offense.  For example, when it considers the "nature and circumstances of the offense," it may consider how the defendant arrived before the Court, but its focus and emphasis in coming up with a disposition should be on the nature and circumstances of the new violation.  If the Court is going to consider the offense's seriousness, the underlying offense's seriousness is largely irrelevant, unless the violation is the same thing as the underlying offense.  In any case, the focus and emphasis, if seriousness is considered at all, should be on the new violation's seriousness.

to revocation sentencings, "because § 3583(e) also requires courts to consider certain § 3553(a) factors when sentencing after a supervised release violation." United States v. Booker, 63 F.4th at 1259 (citing United States v. McBride, 633 F.3d 1229, 1231 (10th Cir. 2011)).  Then, the Tenth Circuit explains: "Because we read § 3583(e) to set forth those sentencing factors that courts must consider, the subsection 'implicitly forbids consideration' of any other § 3553(a) factors when modifying or revoking a term of supervised release." United States v. Booker, 63 F.4th at 1260 (quoting Smart, 518 F.3d at 803-04).   The Tenth Circuit concludes that "the omission of § 3553(a)(2)(A) from the sentencing factors enumerated in § 3583(e) precludes a court from considering the need for retribution when modifying or revoking a term of supervised release." United States v. Booker, 63 F.4th at 1260.  The district court, in United States v. Booker, thus, errs, because it "directly quoted" from § 3553(a)(2)(A) when explaining the reasons for Booker's sentence, and § 3553(a)(2)(A) is a factor the district court cannot consider when modifying or revoking Booker's term of supervised release.  63 F.4th at 1262.[12]

In particular, a district court must consider the policy statements in Chapter 7 of the Guidelines before imposing a sentence for violations of the conditions of supervised release.  See United States v. Vigil, 696 F.3d at 1002; United States v. Kelley, 359 F.3d 1302, 1304-05 (10th

---

[12]The Court notes that, in United States v. Booker, the Tenth Circuit concludes that the district court's error in considering § 3553(a)(2)(A) does not affect the defendant's substantial rights.  See United States v. Booker, 63 F.4th at 1262.  The Tenth Circuit explains:

> We concluded that a single reference to punishment did not affect the defendant's substantial rights. [United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)]. The court did not rely on the need for punishment in setting forth his initial reasons for the new sentence based upon violation of the terms of supervised release, and only raised it after defense counsel objected to his client receiving a high-end sentence.

United States v. Booker, 63 F.4th at 1263.

Cir. 2004)(Ebel, J.).  The Guidelines' commentary is generally an authoritative interpretation of the rules.  See Stinson v. United States, 508 U.S. 36, 38 (1993).  "[T]he Chapter 7 provisions dealing with violations of supervised release are not mandatory sentencing guidelines; rather, they merely constitute advisory 'policy' statements."  United States v. Contreras-Martinez, 409 F.3d 1236, 1240 (10th Cir. 2005)(quoting United States v. Tsosie, 376 F.3d 1210, 1218 (10th Cir. 2004)).  See United States v. Lee, 957 F.2d 770, 773-74 (10th Cir. 1992)("[T]he policy statements regarding revocation of supervised release contained in Chapter 7 of the U.S.S.G. are advisory rather than mandatory in nature" and that "they must be considered by the trial court in its deliberations concerning punishment for violation of conditions of supervised release").

"All discussions of applicable sentences before a district court following the revocation of supervised release 'should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum.'"  United States v. Burdex, 100 F.3d 882, 885 (10th Cir. 1996)(Henry, J.)(quoting United States v. Hofierka, 83 F.3d 357, 362 (11th Cir. 1996)).  While district courts must consider Chapter 7's policy statements in imposing sentences after revocation of supervised release, "'[m]agic words, however, are not required to demonstrate fulfillment of this requirement.'"  United States v. Vigil, 696 F.3d 997, 1002 (10th Cir. 2012)(quoting United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir. 2005)).  "Rather, it is enough if the district court considers § 3553(a) en masse and states its reasons for imposing a given sentence."  United States v. Penn, 601 F.3d at 1011.

**LAW REGARDING SUPERVISED RELEASE REVOCATION AND REVOCATION HEARINGS**

Subsection (e)(3) of § 3583 permits courts to revoke supervised release on the conclusion, by a preponderance of the evidence, that the defendant violates a condition of probation.  See 18 U.S.C. § 3583(e).  Section 3583(e)(3) sets forth the process for revoking supervised release:

> **(e)**     **Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --
>
> . . . .
>
>     (3)     revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than three years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

18 U.S.C. § 3583(e). "Preponderance of the evidence" is "evidence sufficient to persuade you that a fact is more likely present than not present." Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, Criminal Pattern Jury Instructions § 1.05.1, at 10 (2025 ed.)("Pattern Jury Instructions"). Preponderance of the evidence is:

> The greater weight of the evidence, not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other..

"Preponderance of the Evidence," Black's Law Dictionary 18(c) (12th ed. 2024).

Where, as here, revocation of supervised release is contested, courts must hold a revocation hearing. See Fed. R. Crim. P. 32.1(b)(2). Rule 32.1 of the Federal Rules of Criminal Procedure governs revocation hearings. See Fed. R. Crim. P. 32.1. Rule 32.1 provides in relevant part:

>        (2)        Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
>
>> (A)        written notice of the alleged violation;
>>
>> (B)        disclosure of the evidence against the person;
>>
>> (C)        an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
>>
>> (D)        notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
>>
>> (E)        an opportunity to make a statement and present any information in mitigation . . . .

Fed. R. Crim. P. 32.1(b).

Although rule 32.1(b)(2) provides for a revocation hearing, the hearing is "not a formal trial." Comment to Rule 32.1(a)(2). Instead, revocation hearings are to be more flexible and inclusive than criminal trials. See Morrissey v. Brewer, 408 U.S. 471, 489 (1972).[13] The parties may call witnesses and present evidence, but the process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey v. Brewer, 408 U.S. at 489. To that end, the Federal Rules of Evidence do not apply in revocation hearings. See Fed. R. Evid. 1101(d)(3) ("These rules -- except for those on privilege -- do not apply to . . . miscellaneous proceedings such

---

[13]Rule 32.1 was adopted in 1979. See Advisory Committee Notes on Fed. R. Crim. P. 32.1. It replaces the former "revocation of parole" system with a new "revocation of supervised release" system. See Advisory Committee Notes on Fed. R. Crim. P. 32.1. The Supreme Court decides Morrissey v. Brewer in 1972, before rule 32.1's adoption. Accordingly, the Supreme Court's analysis concerns revocation of parole and not of revocation of supervised release. Nevertheless, the Tenth Circuit interprets Morrissey v. Brewer to apply to revocation of supervised release. See Jones, 818 F.3d at 1098-99 (discussing Morrissey v. Brewer as part of rule 32.1's history and development).

as . . . granting or revoking probation or supervised release . . . ."); United States v. Diaz, 986 F.3d 202, 209 (2d Cir. 2021).

Also in service of flexibility and inclusivity, defendants have a lesser right to confrontation in revocation hearings. See Jones, 818 F.3d at 1098. "The Sixth Amendment [to the Constitution of the United States of America] is a trial right" and does not apply to revocation hearings. United States v. Hernandez, 778 F. Supp. 2d 1211, 1225 (D.N.M. 2011)(Browning, J.). Rule 32.1 of the Federal Rules of Criminal Procedure gives, however, the defendant at the revocation hearing "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(c). Instead of running through a standard confrontation analysis like the one that the Supreme Court mandates in Crawford v. Washington, 541 U.S. 36 (2004)("Crawford"), courts presiding over revocation hearings engage in a balancing test, see Jones, 818 F.3d at 1099-100. When the United States relies on a non-testifying declarant's out-of-court statement in a revocation hearing, the court "must determine whether the 'interest of justice does not require the witness to appear' by balancing (1) 'the person's interest in the constitutionally guaranteed right to confrontation' against (2) 'the government's good cause for denying it.'" Jones, 818 F.3d at 1099-100 (quoting Advisory Committee Notes to the 2002 Amendment to Fed. R. Crim. P. 32.1). See Rule 32.1 Advisory Committee's Note to the 2012 Amendment (instructing courts to apply a balancing test that weighs "the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it"); United States v. Hernandez, 428 F. Supp. 3d at 788 ("When applying the balancing test, the Court must weigh the defendant's interest in cross-examining and confronting [a] witness with the government's good cause for not presenting the witness." (citing Jones, 818 F.3d at 1098)). The testimony's "reliability is a very

important factor in determining the strength of a releasee's confrontation right.'" Jones, 818 F.3d at 1100 (quoting Curtis v. Chester, 626 F.3d 540, 546 (10th Cir. 2010)(emphasis omitted in Jones, but in Curtis v. Chester)).  The Tenth Circuit uses adopted this balancing test "when determining a releasee's confrontation rights at a revocation hearing." Jones, 818 F.3d at 1099.  See, e.g., United States v. Hykes, 653 F. Supp. 3d 913, 917 (D.N.M. 2022)(Browning, J.)(making findings of fact in a revocation of supervised release memorandum opinion and order based on evidence that survives the balancing test that the Tenth Circuit adopts in Jones, 818 F.3d at 1098); United States v. Calvert-Cata, No. CR 16-4566 JB, 2022 U.S. Dist. LEXIS 194756, at *30-31 (D.N.M. October 26, 2022)(Browning, J.)(determining in the alternative that, even if it must apply the Jones, 818 F.3d at 1098, balancing test  to the victim's out-of-court statements, the statements are admissible, because the United States has good cause not to call the witness to testify at the revocation hearing).

Although rule 32.1 and the Jones balancing test are geared toward decreasing procedural protections for defendants in revocation hearings and increasing the universe of evidence courts can consider in those hearings, in practice, rule 32.1 and Jones may limit evidence unnecessarily and unwisely.  In some instances, rule 32.1 compels courts presiding over revocation hearings to disregard out-of-court statements even though those same out-of-court statements are admissible under the Federal Rules of Evidence and Crawford if offered at trial, regardless whether the declarant is available to testify at the trial.[14]  Those instances are troubling for two reasons.  First,

---

[14]The Court confronts a similar issue in United States v. Hernandez, 428 F. Supp. 3d 775. There, an officer responds to a domestic disturbance in Rio Rancho, New Mexico.  See 428 F. Supp. 3d at 782.  When the officer arrives at the scene, the victim "appeared distressed," and tells the officer that the defendant assaulted her and attempted to set fire to a kitchen, among other things.  428 F. Supp. 3d at 782.  The defendant is on supervised release at the time, and the USPO's probation officer subsequently petitions to revoke his supervised release.  See 428 F. Supp. 3d at

defendants in those cases receive a greater right to confrontation in the revocation context than they do in the trial context.  It is difficult -- if not impossible -- to square that outcome with the Tenth Circuit's guidance that defendants are supposed to have a more limited right to confrontation in the revocation setting than they do in the trial setting.  See Jones, 818 F.3d at 1098.  Second, courts in revocations must rely on smaller universes of evidence than they do in the trial setting.  Again, it is difficult -- if not impossible -- to reconcile that result with the Supreme Court's guidance in Morrissey v. Brewer that courts presiding over revocation hearings should be able to consider "material that would not be admissible in an adversary criminal trial."  408 U.S. at 489.

The Honorable Andrew S. Oldham, United States Circuit Judge for the United States Court of Appeals for the Fifth Circuit, documents this paradox in his concurring opinion in United States v. Alvear, 959 F.3d 185, 191 (5th Cir. 2020)(Oldham, J., concurring).  In his concurrence, Judge Oldham discusses "three oddities" in rule 32.1 caselaw.  United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring).[15]  First, he notes that "it's unclear what if anything the Due Process

---

780.  At the hearing, the United States does not call the victim, yet it relies on her statements to the officer on the scene.  See 428 F. Supp. 3d at 781.  The Court applies the Jones balancing test and determines that it cannot consider the victim's out-of-court statements to the officer.  See 428 F. Supp. 3d at 788.  Those out-of-court statements, however, are admissible hearsay in a trial setting as either a present sense impression or excited utterance.  See Fed. R. Evid. 803(1), (2).  Given the Court's recent decisions in United States v. Chavez, No. CR 15-3557 JB, 2023 WL 5672594 (D.N.M. Sept. 1, 2023)(Browning, J.), and United States v. Green, No. CR 06-2605 JB, 2022 WL 1184650 (D.N.M. April 21, 2022)(Browning, J.), aff'd, No. 22-2062, 2023 WL 4195884 (10th Cir. June 27, 2023), the Court would admit these out-of-court statements today.

[15]The Fifth Circuit does not use the Jones test.  It uses, however, a balancing test analogous to Jones test, as does every other Court of Appeals that has handled a rule 32.1 issue.  See United States v. Taveras, 380 F.3d 532, 536 (1st Cir. 2004); United States v. Chin, 224 F.3d 121, 124 (2d Cir. 2000); United States v. Lloyd, 566 F.3d 341, 344 (3d Cir. 2009); United States v. Doswell, 670 F.3d 526, 530 (4th Cir. 2012); Barnes v. Johnson, 184 F.3d 451, 454 (5th Cir. 1999); United States v. Jackson, 422 Fed. App'x 408, 410-11 (6th Cir. 2011)(unpublished); United States v. Jordan, 742 F.3d 276, 279 (7th Cir. 2014); United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986); United States v. Comito, 177 F.3d 1166, 1170 (9th Cir. 1999); United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994); United States v. Stanfield, 360 F.3d 1346, 1360 (D.C. Cir. 2004).

Clause adds to the protections of Rule 32.1(b)(2)(C)." United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring). Second, he observes that, "instead of applying Rule 32.1(b)(2)(C), many of our decisions in this area contain nary a citation to it." United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring). Finally, he describes, "oddest of all, sometimes confrontation rights in a revocation hearing can be broader than the confrontation right at trial." United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring)(emphasis in original).

> The Supreme Court has told us that protections in a revocation hearing are (at most) the same as those at trial. See United States v. Haymond, -- U.S. --, 139 S.Ct. 2369, 2378-79 . . . (2019)(plurality opinion); id. at 2385-86 (Breyer, J., concurring in the judgment). That result creates its own difficulties. See id. at 2390-91 (Alito, J., dissenting). But it's an altogether different problem to make the constitutional protections in the revocation hearing broader than at trial. After all, one premise of our system is that post-conviction rights are generally narrower because "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." Herrera v. Collins, 506 U.S. 390, 399 . . . (1993). But when we ask different questions under the Confrontation Clause at trial (is the statement "testimonial"?) and under the Due Process Clause at revocation (is there "good cause" to admit the statement?), we can get incongruous answers.
>
> Consider an example. A boyfriend violently attacks his girlfriend who then immediately calls 911. The Government wants to use her statements to the 911 operator against the boyfriend. At trial, the defendant has no right to prevent the introduction of these statements under the Confrontation Clause because they're not "testimonial." [Ohio v. ]Clark, [576 U.S. 237 (2015)] (citing Davis v. Washington, 547 U.S. 813, 820 . . . (2006)). But this same 911 call is almost certainly hearsay. So at the boyfriend's revocation hearing, he can object to the introduction of the statements under the Due Process Clause, unless there is "good cause" to admit them. See, e.g., [United States v. ]Jimison, 825 F.3d [260,] 263 [(2016)].
>
> The oddities don't end there. The Federal Rules of Evidence apply at trial. And they provide for the admission of all sorts of hearsay: an excited utterance, a statement made for medical treatment, a present sense impression, a business record, a statement against interest. See Fed. R. Evid. 803, 804. But the hearsay rules in the Federal Rules of Evidence do not apply in revocation hearings. Fed. R. Evid. 1101(d)(3) . . . . So if the Government wants to use these same (otherwise-admissible) hearsay statements at a revocation hearing, the court has to apply the "good cause" analysis demanded by the Due Process Clause. That's an additional hurdle that applies post-conviction that does not apply pre-conviction. How odd.

United States v. Alvear, 959 F.3d at 194 (Oldham, J., concurring).

Although 18 U.S.C. § 3583(e) establishes the maximum terms of imprisonment upon the revocation of a defendant's supervised release, the U.S.S.G establishes revocation imprisonment ranges based on the defendant's criminal history category and the violation grade.  U.S.S.G. § 7B1.4(a).  The Guidelines establish three violation categories:

    (1)    GRADE A VIOLATIONS -- conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;

    (2)    GRADE B VIOLATIONS -- conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

    (3)    GRADE C VIOLATIONS -- conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S.S.G. § 7B1.2(a) (capitalization in original).  In determining the applicable revocation imprisonment range, the Guidelines instruct that courts should apply the criminal history category applicable at the time of the defendant's underlying sentencing.  See U.S.S.G. § 7B1.4 cmt. n.1.

## **LAW REGARDING 18 U.S.C § 2256**

Section 2256(2)(A) states:

Except as provided in subparagraph (B), 'sexually explicit conduct' means actual or simulated --

    (i)    sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

    (ii)    bestiality;

    (iii)    masturbation;

(iv)    sadistic or masochistic abuse; or

(v)    lascivious exhibition of the anus, genitals, or pubic area of any person;

18 U.S.C. 2256(2)(A).  Section 2256 does not define the words "sadistic or masochistic abuse." "When a statue does not define its terms, we look to the 'ordinary, contemporary, common meaning' of the terms 'when congress enacted' the statue."  M. S. v. Premera Blue Cross, 118 F.4th 1248, 1266 (10th Cir. 2024)(quoting Food Mktg. Inst. v. Argus Leader Media, 588 U.S. 427, 433-34 (2019)).  See Sunnyside Coal Co. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab., 112 F.4th 902, 910 (10th Cir. 2024)("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their 'ordinary, contemporary, common meaning.'")(quoting Perrin v. United States, 444 U.S. 37, 42 (1979)).

The Merriam-Webster Dictionary defines "sadism" as "the derivation of sexual gratification from the infliction of physical pain or humiliation on another person," sadism, Merriam-Webster.com    Dictionary,    Merriam-Webster,    https://www.merriam-webster.com/dictionary/sadism.  (last visited on Jan. 26, 2026), while defining "masochism" as "the derivation of sexual gratification from being subjected to physical pain or humiliation by oneself or another person," masochism, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/masochism.  (last visited on Jan. 26, 2026). "Abuse," in turn, connotes "physical maltreatment" or physical cruelty/physical abuse.  Abuse, Merriam-Webster.com    Dictionary,    Merriam-Webster,    https://www.merriam-

webster.com/dictionary/abuse.  (last visited on Jan. 26, 2026).[16]  With these definitions in mind, the Court first concludes that "sadistic abuse" is sexual gratification derived from the infliction of pain or humiliation, and "masochistic abuse" is the sexual gratification one derives from receiving the infliction of pain or humiliation.

When the Court interprets analogous language in the United States Sentencing Guidelines ("U.S.S.G.") § 2G2.2(b)(4), it determines that sadistic conduct involves the display of "'infliction of pain and humiliation . . . as a means of giving sexual gratification.'"  United States v. Christy, 888 F. Supp. 2d 1107, 1150-51 (D.N.M. 2012)(Browning, J.)("Christy")(sustaining an objection to sentencing enhancement under U.S.S.G. § 2G2.2(b)(4), because "the Court does not believe that the depiction is one 'intended to portray the infliction of pain and humiliation on very young minor victims as a means of giving sexual gratification to individuals with pedophilic tendencies'" (quoting United States v. Kimler, 335 F.3d 1132, 1143 (10th Cir. 2003)("Kimler")).[17]  Under this understanding, sadistic conduct is present where the material portrays an individual inflicting pain on another person to produce sexual arousal or satisfaction for the perpetrator or viewer.  See Christy, 888 F. Supp. 2d at 1150-51.  This interpretation provides useful guidance in construing the meaning of "sadistic abuse" in the § 2256(2)(A)(iv).  Moreover, appellate precedent construing analogous statutory language guides the Court's interpretation of the words at issue.

---

[16] Merriam-Webster defines "maltreatment" as "to treat cruelly or roughly: abuse." Maltreatment, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/maltreatment.  (last visited on Jan. 26, 2026).

[17] The Court previously uses the New Oxford American Dictionary's definition of "sadistic" as "deriving pleasure from inflicting pain, suffering, or humiliation of others," New Oxford American Dictionary 1537 (A. Stevenson & C. Lindberg eds., 3d ed. 2010), and the New Oxford American Dictionary's definition of "masochism" as "the tendency to derive pleasure, esp. sexual gratification, from one's own pain or humiliation," New Oxford American Dictionary, supra, at 1075, for its interpretation of the terms.  Christy, 888 F. Supp. 2d at 1127.

In Kimler, the Tenth Circuit considers whether images depicting adults penetrating prepubescent children's anus or vaginas portrays pain or humiliation. See Kimler, 335 F.3d at 1143 (stating that the "district court found that some of the images depict anal or vaginal penetration of *prepubescent* children by *adults* causing pain and humiliation . . . .")(italics in the original). The Tenth Circuit agrees with the conclusion of the Honorable Wesley E. Brown, United States District Court Judge for the United States District Court for the District of Kansas, that the depictions "portray[] 'sadistic conduct' within the meaning of the guideline, in that the depictions include and are intended to portray the infliction of pain and humiliation on very young minor victims as a means of giving sexual gratification to individuals with pedophilic tendencies." Kimler, 335 F.3d at 1143. See United States v. Batres, 284 F. App'x 584, *2 (10th Cir. 2008)(stating that, when an image contains an adult sexually penetrating a prepubescent child, "a court can presume that pain and humiliation were inflicted upon the child as a means to give sexual gratification to the view of the image and, thus, is inherently sadistic or violent for purposes of § 2G2.2(b)(4)"). Several other Courts of Appeals define sadism with respect to pain and humiliation. See United States v. Parker, 267 F.3d 839, 847 (8th Cir. 2001)("[T]he conduct portrayed is sufficiently painful, coercive, abusive, and degrading to qualify as sadistic or violent within the meaning of § 2G2.2(b)(3)."); United States v. Turchen, 187 F.3d 735, 739 (7th Cir. 1999)("Turchen")(stating that definitions of sadism and masochism "make clear that sadistic and masochistic conduct includes sexual gratification which is purposefully degrading and humiliating, conduct that causes mental suffering or psychological or emotional injury in the victim"); United States v. Fuller, 77 F. App'x 371, 383 (6th Cir. 2003)(defining sadism "as the '"infliction of pain upon a love object as a means of obtaining sexual release"'")(quoting United States v. Lyckman, 235 F.3d 234, 238 n.19 (5th Cir. 2000)("Lyckman")).

The Court concludes that § 2256(2)(A)(iv)'s use of "sadistic abuse" refers to conduct in which one person inflicts pain or humiliation on another person for the purpose of sexual gratification.  To the extent any ambiguity remains, the Court clarifies that sadistic abuse encompasses both physical and psychological pain.  Although humiliation may be a form of psychological or mental pain, the Courts of Appeals do not draw that distinction.  See United States v. Maurer, 639 F.3d 72, 80 n.6 (3d Cir. 2011)(stating its "position is consistent with precedent in other circuits," when it concludes sadistic abuse includes "'mental suffering or psychological or emotional injury in the victim'" (quoting United States v. Rodgers, 610 F.3d 975, 978-79 (7th Cir. 2010))); United States v. Phillips, 383 F. App'x 527, *6 n2 (6th Cir. 2010)(stating that "this circuit has never explicitly limited 'sadistic or masochistic conduct" to conduct likely to cause *physical* pain; indeed, other circuits have construed the phrase broadly enough to encompass conduct likely to cause extreme psychological or emotional distress" (citing Lyckman, 235 F.3d at 239; Turchen, 187 F.3d at 739)(italics in the original)).  To the extent that it is necessary to distinguish between humiliation and psychological pain, the Court does.  Accordingly, the Court concludes that § 2256(2)(A)'s use of "sexually explicit conduct" includes the actual, or simulated, conduct in which one person inflicts physical or psychological pain, or humiliation, on another person for the purpose of sexual gratification.

## ANALYSIS

The Court concludes that: (i) Dates violates his modified conditions of supervised release, where Dates searches for written materials, reads written materials, and saves images of written material describing historical acts of sexual violence, because the United States shows, by a preponderance of evidence, that the written material Dates saves to his cellphone depicts "sexually explicit conduct" within § 2256's definition, when the written material portrays in words Corrl and

his accomplice inflicting pain and humiliation on children for the sexual gratification of the Corrl; (ii) Dates does not violate his modified conditions of supervised release, where Dates searches for images of a serial killer/sex offender's adolescent victim, views images of a serial killer/sex offender's adolescent victim, and saves images of a serial killer/sex offender's adolescent victim, because the United States does not show, by a preponderance of evidence, that the image Dates saves to his cellphone depicts "sexually explicit" conduct within § 2256's definition; (iii) Dates commits a Grade C violation pursuant to the Guidelines policy statement § 7B1.1; (iv) Dates' criminal history category is I; and (v) Dates' grade C violation and criminal history category of I, under § 7B1.1 of the Guidelines, establishes a revocation imprisonment range of 3 to 9 months. Pursuant to 18 U.S.C. § 3583(e)(3), the maximum term of imprisonment upon revocation of supervised release is 24 months.

I.    **DATES VIOLATES HIS TERMS OF SUPRVISED RELEASE WHEN HE READS WRITTEN MATERIALS AND SAVES IMAGES OF WRITTEN MATERIALS DESCRIBING HISTORICAL ACTS OF SEXUAL VIOLANCE.**

18 U.S.C. § 3583(e)(3) governs supervised release revocations. Under § 3583, a district court may, after considering the relevant factors under § 3553(a), revoke a term of supervised release and impose a term of imprisonment if the court finds by a preponderance of the evidence that the defendant violates a condition of supervised release. See 18 U.S.C. § 3583(e). The standard of proof, which is proof by a preponderance of the evidence, requires only that the evidence demonstrate that a fact is more likely "present than not present." Pattern Jury Instructions at 10. Here, the United States alleges that Dates violates his conditions of supervised release, because he possesses material depicting sexually explicit conduct, including sadistic abuse of minors. See Petition for Revocation at 1-2.

Dates' special conditions of supervised release prohibit him from "viewing or possessing any material that depicts sexually explicit conduct as defined in 18 U.S.C. § 2256, including images, books, writings, drawings, video games, or videos depicting actual sexual intercourse." Petition for Revocation at 2.  In its Findings of Fact, the Court resolves the parties' factual dispute regarding whether the Wikipedia article at issue "depicts" or merely "describes" sexual assault, rape, and torture.  Findings of Fact, supra, n.7.  The remaining question, therefore, is a legal one -- whether the Wikipedia article depicting sexual assault, rape, and torture falls within § 2256(2)(A)'s definition of "sexually explicit conduct."

Dates narrows the dispute.  He concedes that the conduct that the article describes includes rape, sexual assault, and torture.  See 2025 Tr. at 6:19-21 (Elsenheimer).  Indeed, Dates acknowledges that "[i]f it went into graphic depiction of what [] the torture or the rape or the sexual assaults [were] then that would depict torture in a way that [is] . . . sexually explicit conduct." 2025 Tr. at 6:19-21 (Elsenheimer).  The Court understands Dates to argue that the material's permissibility depends on the degree of explicitness, rather than on whether the material depicts sexually explicit conduct at all.  The Court does not agree with that argument.

The Court concludes that Dates violates the conditions of his supervised release by possessing material § 2256(2)(A) defines as depicting sexually explicit conduct.  Section 2256(2)(A)(iv) expressly includes the phrase "sadistic abuse" to describe "sexually explicit conduct."  18 U.S.C. § 2256(2)(A)(iv).  As the Court explains above, "sadistic abuse" refers to conduct in which one person inflicts physical or psychological pain, or humiliation, on another person for the purpose of sexual gratification.  Law Regarding 18 U.S.C. § 2256, supra, at 37.

Here, the Wikipedia article depicts Dean Corll and another assailant inflicting pain and humiliation on minor victims for Corll's sexual gratification.  See Dean Corll, Wikipedia,

https://en.wikipedia.org/wiki/Dean_Corll (last visited Jan. 7, 2025). Dates does not dispute the United States' characterization of Corll as a figure known to "sexually abuse and sexually torture minor boys before he would kill them." 2025 Tr. at 8:1-5 (Roybal). The infliction of pain and humiliation for sexual gratification is why Corll is infamous, and sadistic abuse is what the article describes. The Court's Findings of Fact set forth the specific language Dates saves from the article, including that Corrl carries the victims "into his bedroom and tied them to opposite sides of his torture board," placing one victim on his stomach and the other on her back; Corrl removing "the adhesive tape from Kerley's mouth before informing him of his intentions to 'look up' his anus"; and the other perpetrator cutting away the jeans and underwear of a victim with a eighteen-inch hunting knife as Corrl assaults and tortures the other victim. Findings of Fact, supra, n.7. These horrific acts take place against the background of the victims' "writhing, pleading and shouting." Findings of Fact, supra, n.7.

The Court concludes that this language depicts conduct in which Corll inflicts physical and psychological pain and humiliation on the victims for his sexual gratification, bringing the conduct within § 2256's definition of sexually explicit conduct. See 18 U.S.C. § 2256(2)(A)(iv). To the extent that Dates asks the Court to engage in a line-drawing exercise about whether the material is "sexually explicit enough," the Court does not think that is the question; if the material is sexually explicit, it is by definition sexually explicit enough to come within § 2256. 2025 Tr. at 17:6-8 (Court)("So when I said a minute ago this is not sexually explicit enough you didn't embrace that, but is that not what your argument is?"). Dates' conditions of supervised release prohibit him from viewing or possessing material that depicts sexually explicit conduct; they do not require the conduct to meet some heightened threshold of explicitness beyond the statutory definition. See Judgment at 5.

Dates further argues that, because the material appears on Wikipedia or is only a "historical" account of what happened, it cannot constitute sexually explicit material. 2025 Tr. at 14:5-20 (Elsenheimer). The implicit argument Dates makes is that Wikipedia censors out any sexually explicit conduct, because it is a public website or that historical accounts are immune from falling within § 2256's definition of sexually explicit conduct. That argument is unpersuasive. Dates conflates common social understandings of sexually explicit material with the statutory definition in § 2256. Congress is free to define sexually explicit conduct by standards independent of social norms or of a particular website's editorial practices. This case illustrates that distinction. While an average Wikipedia reader may not consider the article sexually explicit for general historical purposes, the same material may nevertheless fall within § 2256's definition, because, as here, the article depicts sadistic abuse.

This conclusion accords with the purposes of supervised release and revocation, which include protecting the public and assisting offenders in reintegrating into society as law-abiding citizens. See United States v. Gutierrez, No. CR 15-3955 JB, 2021 WL 2589127 (D.N.M. June 24, 2021)(Browning J.)(stating that one of supervised release's goals is to ease the defendant "back into society after he has served a prison term, and try to help him stay on the straight and narrow path as he comes back into society" (citing 18 U.S.C. §§ 3553(a)(1)-(7))). Dates pleads guilty to distributing visual depictions of minors engaged in sexually explicit conduct. See PSR ¶ 2, at 4. That offense involves material portraying minors enduring pain and humiliation for the sexual gratification of others. See PSR ¶ 15, at 5 (mentioning Dates' binder that "described how to butcher and strangle children"). Preventing Dates from possessing material that depicts the rape and torture of minors serves both to protect the public and to reduce exposure to content that may function as a trigger for reoffending. The relevant inquiry is whether the material depicts sexually

explicit conduct as § 2256 defines that phrase, and not whether it appears on Wikipedia, nor whether the conduct is historically accurate. Accordingly, the Court concludes that the Wikipedia article constitutes sexually explicit material within § 2256(2)(A)(iv)'s meaning, and the United States proves by a preponderance of the evidence that Dates violates the conditions of his supervised release.

## II. DATES DOES NOT VIOLATE HIS TERMS OF SUPRVISED RELEASE WHERE HE SEARCHES FOR AND VIEWS AN IMAGE OF A SERIAL KILLER'S ADOLESCENT VICTIM.

Dates' special conditions of supervised release prohibit him from "viewing or possessing any material that depicts sexually explicit conduct as defined in 18 U.S.C. § 2256, including images, books, writings, drawings, video games, or videos depicting actual sexual intercourse." Petition for Revocation at 2. In its Findings of Fact, the Court resolves the parties' factual dispute, finding the image does not contain nudity. See Findings of Fact, supra, n.5. Accordingly, here, the Court answers the legal question whether the image falls within § 2256(2)(A)'s definition of "sexually explicit conduct." The image is not sexually explicit conduct.

The image that Dates saves does not constitute sexually explicit conduct. Section 2256 limits sexually explicit conduct to five areas of conduct, including sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the anus, genitals, or pubic area of any person. See 18 U.S.C. §§ 2256(2)(A)(i)-(v). "Polaroid Boy," as the picture is known, is a Polaroid of an unknown Corrl victim. 2025 Tr. at 8:11-13 (Roybal). The image, as the Court determines, does not depict another person, an animal, or nudity; nor does it show anything beyond a potentially smiling face. The United States does not articulate any basis on which the image qualifies as sexually explicit conduct other than its assertion that the image contains nudity, which the Court determines the image does not contain nudity. Accordingly, the Court concludes that

Dates does not violate the special condition of supervised release prohibiting him from viewing or possessing material that § 2256 defines as depicting sexually explicit conduct, because the United States does not prove by a preponderance of the evidence that the image falls within the conduct that § 2256 proscribes.

**IT IS ORDERED** that the: (i) Defendant Richard Dates has violated the condition that he is "prohibited from viewing or possessing any material that depicts sexually explicit conduct as defined in 18 U.S.C. 2256, including images, books, writings, drawings, video games, or videos depicting actual sexual intercourse.  This also includes computer or computer-generated images or pictures, whether made or produced by electronic, mechanical, or other means"; (ii) Dates commits a Grade C violation pursuant to the United States Sentencing Guidelines § 7B1.1; (iii) Dates' criminal history category is I; and (iv) Dates' grade C violation and criminal history category of I, under the United States Sentencing Guidelines § 7B1.1, establishes a revocation imprisonment range of 3 to 9 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Ryan Ellison
  United States Attorney
Jaymie L. Roybal
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Aric G. Elsenheimer
  Federal Public Defender
Albuquerque, New Mexico

   *Attorney for the Defendant*